UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

GEOFFREY J. GRAY                                                                    PLAINTIFF

VS.                                                   CIVIL ACTION NO. 3:14cv634-DPJ-FKB

LEVI STRAUSS & COMPANY, et al.                                        DEFENDANTS

ORDER OF DISMISSAL

This labor dispute is before the Court on the Rule 12(b)(6) Motion to Dismiss [9] filed by

Defendants Levi Strauss and Company ("Levi Strauss"), Thomas Maratea, and Adrian Woodall.

Having fully considered the premises, the Court finds that Defendants' Motion [9] is granted, and

Gray's claims are dismissed, some with prejudice.

I.        Facts and Procedural History

The following allegations are considered true for the purposes of this motion.  Beginning

on August 20, 2010, Levi Strauss employed Plaintiff Geoffrey J. Gray as a flexpac operator.

Compl. [1] ¶ 12.  As part of his employment, Gray was represented by Workers United Labor

Union Local 2550 and his union representative Annie Curtis.  *Id.* ¶¶ 5, 6, 16, 19.  On August 27,

2013, Gray was called to a meeting with Levi Strauss's human resources manager, Thomas

Maratea; Gray's direct supervisor, Adrian Woodall; facility manager, Mark Grovich; and Curtis.

*Id.* ¶ 21.  In that meeting, Maratea, Woodall, and Curtis explained to Gray that he had been seen

wearing a company retail t-shirt sold only in New York and San Francisco.  *Id.* ¶ 22.  Although

Gray explained that the shirt was a gift, his supervisors were unable to confirm his account and

further claimed that the shirt was missing from inventory.  *Id.*  ¶¶ 23–27.  As a result, at a

meeting on August 29, 2013, Gray was suspended from work for theft.  *Id.* ¶ 30.

Between September 2 and 12, Gray contacted Curtis, his union representative, regarding the status of his suspension, and on September 12, Curtis advised Gray that his employment had been terminated.  *Id.* ¶¶ 32–33.  Gray subsequently applied for unemployment benefits, and on January 13, 2014, he received notice that Levi Strauss appealed those benefits.  *Id.* at 36–37.  In that notice, Gray for the first time received paperwork related to a grievance filed on his behalf pursuant to his union's collective-bargaining agreement ("CBA").  *Id.* ¶¶ 38–39.  The paperwork indicated that grievance procedures had been initiated on September 12 but that the grievance was denied during a meeting on January 8, 2014.  *Id.* ¶¶ 40–45.

On August 13, 2014, Gray filed his Complaint in this Court, alleging that Defendants breached his employment contract by failing to comply with applicable grievance and discharge procedures and that Defendants discriminated against him in violation of 42 U.S.C. § 1981.  Compl. [1].  He seeks compensatory damages, back pay, declaratory and injunctive relief, punitive damages, and attorney's fees.  Attachment [28] ¶¶ 88–89; Compl. [1] ¶¶ 90–97.  On September 3, 2014, Defendants Levi Strauss, Maratea, and Woodall filed the instant Motion to Dismiss [9].  Gray responded [15, 16], and Defendants replied [19].[1]  The Court is prepared to rule.

II.     Standard of Review

When considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*,

---

[1]Subsequently, Defendants Annie Curtis and Workers United Labor Union Local 2550 also moved to dismiss [21], and the Court granted that motion in an agreed order on October 16, 2014.  Order [25].

188 F.3d 322, 324 (5th Cir. 1999) (per curiam)).  To overcome a Rule 12(b)(6) motion, Plaintiff

must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  "Factual allegations must be enough to raise a right to relief

above the speculative level, on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)."  *Id.* at 555 (citations and footnote omitted).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  It follows that "where the well-pleaded facts

do not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting

Fed. R. Civ. P. 8(a)(2)).  "This standard 'simply calls for enough fact to raise a reasonable

expectation that discovery will reveal evidence of' the necessary claims or elements."  *In re S.*

*Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 556).

Dismissal under Rule 12(b)(6) may be proper "where it is evident from the plaintiff's

pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the

like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (cited in *Jaso v. Coca Cola Co.*,

435 F. App'x 346, 351–52 (5th Cir. 2011) (per curiam) (also citing 5B Charles Alan Wright &

Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004) ("[T]he inclusion of dates

in the complaint indicating that the action is untimely renders it subject to dismissal for failure to

state a claim."))).

Finally, a court ordinarily decides a motion to dismiss for failure to state a claim looking

only at the face of the complaint.  *Wilson v. Birnberg*, 667 F.3d 591, 600 (5th Cir. 2012).  That

said, some documents outside the pleadings may be considered under Rule 12(b)(6).  For

example, documents attached to a motion to dismiss that are "referred to in the plaintiff's

complaint and . . . central to [his] claim" are considered part of the pleadings.  *Causey v. Sewell

Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).  In this case, Gray's Complaint

references the CBA and various grievance records.  The Court therefore considers those

documents.

III.    Analysis

Defendants assert that Gray's claims must be dismissed for four reasons:  (1) his breach-

of-contract claims are time barred; (2) he may not bring breach-of-contract claims against

individual Defendants Maratea and Woodall; (3) he failed to exhaust his contractual remedies

under the CBA as to all claims; and (4) his Complaint otherwise fails to meet the pleading

standards of Rule 8(a).  Because the Court agrees with Defendants' positions on the first three

arguments, it will focus on those.

A.    Statute of Limitations—Breach of Contract

Gray's breach-of-contract cause of action is properly construed as arising under the Labor

Management Relations Act § 301(a), 29 U.S.C. § 185(a).  *See Thomas v. LTV Corp.*, 39 F.3d

611, 617–19 (5th Cir. 1994) (holding that § 301(a) preempted state-law breach-of-contract claim

involving breach of collective-bargaining agreement).  And while § 301(a) provides no statute of

limitations, the United States Supreme Court has borrowed the six-month limitations period from

§ 10(b), 29 U.S.C. § 160(b), for so-called "hybrid suits."  *DelCostello v. Int'l Bhd. of Teamsters*,

462 U.S. 151, 164–65, 171–72 (1983).

Hybrid suits grow from the employee's duty to exhaust a CBA's grievance and arbitration remedies.  *See DelCostello*, 462 U.S. at 163–65.  "[W]hen the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation, . . . [the] employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding."  *Id.* at 164.

> Such hybrid suits formally comprise two causes of action.  First, the employee alleges that the employer violated § 301 . . . by breaching the collective-bargaining agreement.  Second, the employee claims that the union breached its duty of fair representation, which [the] Court has implied from the scheme of the NLRA, by mishandling the ensuing grievance-and-arbitration proceedings.

*Reed v. United Transp. Union*, 488 U.S. 319, 328 (1989).  Significantly, an employee "may sue one defendant and not the other, but the case to be proved is the same whether one or both are sued."  *Thomas*, 39 F.3d at 621 (citing *DelCostello*, 462 U.S. at 165).

Gray's Complaint reflects both elements.  First, Gray plainly states a breach-of-contract claim against Levi Strauss.  *See, e.g.*, Compl. [1] ¶ 56 (averring that employer terminated his employment "without just cause").  He likewise faults Local 2550 and Curtis.  *See, e.g.*, *id.* ¶¶ 5, 6 (naming Curtis and Local 2550 as defendants); *id.* ¶ 63 ("Plaintiff submits the *defendants* failed to comply with Articles 6 and 8 of the Contract when they denied him the opportunity to grieve the suspension and/or termination." (emphasis added)).  And while Gray later dismissed the union defendants, he need not sue both the company and the union in order to state a hybrid claim.  *Thomas*, 39 F.3d at 621 (citing *DelCostello*, 462 U.S. at 165).

Though Gray pleads a hybrid suit, he contends that Mississippi's three-year statute of limitations must apply when the plaintiff "is not advancing a claim that was, or could have been,

resolved through the grievance procedure of the CBA."  Pl.'s Mem. [16] at 7 (citing *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. (UAW), AFL-CIO v. Hoosier Cardinal Corp.*, 383 U.S. 696 (1966)).  In *UAW v. Hoosier Cardinal Corp.*, the United States Supreme Court applied a local statute of limitations to an alleged breach of a collective-bargaining agreement.  383 U.S. at 707–08.  But the agreement in *Hoosier* lacked grievance procedures.  Later, in *DelCostello*, the Court faced a collective-bargaining agreement that did include grievance procedures and a duty to exhaust.  Based on that duty, the Court distinguished *Hoosier* and applied § 10(b)'s six-month limitations period.  *DelCostello*, 462 U.S. at 162–65.

      *DelCostello* applies to Gray's claims.  Articles 6 and 7 of the CBA contain grievance and arbitration requirements.  And unlike the *Hoosier* plaintiff, Gray *is* advancing claims that could have been resolved through the CBA's remedial procedures—in fact, he maintains that Defendants breached those very provisions.

      Gray nevertheless clings to *Hoosier*, and does so by apparently arguing that Levi Strauss repudiated the CBA's grievance provisions, rendering them void.  *See* Pl.'s Mem. [16] at 7–8 (citing *Vaca v. Sipes*, 386 U.S. 171, 185 (1967) (discussing repudiation)).  In *Vaca*, the United States Supreme Court observed that an "employee should not be limited to the exclusive remedial procedures established by the contract . . . when the conduct of the employer amounts to a repudiation of those contractual procedures."  386 U.S. at 185; *see also Rabalais v. Dresser Indus., Inc.*, 566 F.2d 518, 519 (5th Cir. 1978) (per curiam) ("No exhaustion is necessary if . . . the employer's conduct amounts to a repudiation of the remedial procedures specified in the contract . . . .").  Assuming without deciding that repudiation would distinguish *DelCostello*, Gray has not established it.

According to Gray, Levi Strauss repudiated the remedial procedures when it failed to provide notice related to his suspension and subsequent discharge from employment. Pl.'s Mem. [16] at 4–5. Gray also states that "[i]n order for plaintiff to protest his discharge and file a grievance in accordance with Step 3 of the Article 6 Grievance Procedure, he must be in receipt of Levi Strauss'[s] written notice of its disciplinary actions and the reasons for these actions." *Id.* at 4. Both arguments fail on the Rule 12(b)(6) record.

To begin with, even assuming Levi Strauss gave no notice, it did not repudiate the remedial procedures specified in the contract. A company repudiates a collective-bargaining agreement's remedial measures when it "refus[es] to abide by contractual terms requiring the processing of a matter through a grievance procedure . . . ." *Boone v. Armstrong Cork Co.*, 384 F.2d 285, 289 (5th Cir. 1967). But a mere "misconception of [the parties'] contractual obligations" is insufficient to repudiate them. *Id.* at 290.

Here, the Complaint and relevant documents indicate that instead of repudiating the grievance procedures, Levi Strauss engaged in them when presented with grievances. Starting with the suspension decision, the Complaint states that Defendants "placed plaintiff on suspension effective August 29, 2013." Compl. [1] ¶ 30. Section 6.2 of the CBA allows an employee to file a grievance within two days "of the occurrence *or knowledge* of the event." CBA [9-1] at 5 (emphasis added). Contrary to Gray's present argument, *see* Pl.'s Mem. [16] at 3–6, he was not required to wait for notice before filing his grievance. And there is no indication in the Complaint that Gray filed such a grievance within two working days of learning he had been suspended.

Regarding the termination decision, Section 8.4 of the CBA states that "[i]f an employee desires to protest his discharge as being not for just cause, he must file a grievance in Step 3 in writing within five (5) working days *from the date of discharge*." CBA [9-1] at 7 (emphasis added). Again, the CBA does not require written notice before Gray may file a grievance. *Id.* Moreover, Levi Strauss did engage in the grievance process for the termination decision. According to Gray, Curtis informed him about the termination on September 12, 2013, Compl. [1] ¶ 33, and the union filed a grievance that same day. *Id.* ¶ 40; Grievance Report [16-1] at 1. There is no indication in the Complaint or records that Levi Strauss refused to consider it. Instead, Gray later received a Grievance Report prepared by Levi Strauss stating that a Step 3 meeting occurred January 8, 2014. Compl. [1] ¶ 44; Grievance Report [16-1] at 2. That report affirmed the discharge decision. Grievance Report [16-1] at 2–3.

After Gray discovered the denial of the Step 3 grievance, he did not further invoke the CBA's grievance or arbitration provisions and thereby force Levi Strauss to comply. Section 7.1 of the CBA gave Gray fifteen (15) working days from "receipt of the Company's written answer at the last step of the grievance procedure" to give written notice of intent to arbitrate. CBA [9-1] at 6. Gray received the Grievance Report January 13, 2014, Compl. [1] ¶ 37, and had ample time to submit a notice of arbitration. Yet he elected instead to file this suit. So again, Levi Strauss did not refuse to engage in those procedures.

And to the extent Gray maintains that he discovered the lack of notice regarding his suspension and termination on January 13, 2014, Section 6.2 gave him two working days from his "knowledge of the event" to file a grievance challenging the "application of the provisions of the [CBA]." CBA [9-1] at 5. Here too, there is no indication Gray filed a grievance regarding

8

the alleged lack of notice (or any other procedural defects he may have then discovered). Thus the record indicates that Levi Strauss engaged in the grievance procedures when presented grievances and did not repudiate the CBA.

And even assuming some breach occurred with respect to the notice requirements, it was not a repudiation of the CBA as a whole or the grievance/arbitration provisions. The notice provisions are found in Article 8 dealing with "Discipline and Discharge." *See* CBA [9-1] at 7. They are not part of the grievance and arbitration provisions found in Articles 6 and 7. *Id.* at 5–6. Thus, accepting Gray's claimed breaches as true and construing them as a repudiation, it would only be a partial repudiation as to Article 8—Articles 6 and 7 would remain unaffected. *Cf. M&G Polymers USA, LLC v. Tackett*, No. 13-1010, 2015 WL 303218, at *6 (U.S. Jan. 26, 2015) ("[Courts] interpret collective-bargaining agreements . . . according to ordinary principles of contract law . . . ."); Restatement (Second) of Contracts §§ 236, 243 (1981) (unless the breach substantially impairs value of the contract, it is a partial breach that does not fully discharge other duties under the contract).

Along this same line, Sections 6.1 and 7.1 allow grievance and subsequent arbitration over alleged failure to properly apply the CBA. CBA [9-1] at 5 (allowing grievances for disputes over "application of the provisions of the Agreement"); *id.* at 6 (agreeing to arbitrate "allegation[s] that this Agreement has not been properly . . . applied"). So a procedural defect is an issue that may be presented in the grievance process—not a repudiation of the grievance procedures.

In sum, the record does not suggest repudiation. And absent the repudiation argument, the CBA contains grievance and arbitration provisions that trigger the six-month limitations

9

period announced in *DelCostello*.  462 U.S. at 162–65; *see also Thomas*, 39 F.3d at 621–22.
There being no dispute that the claim was filed beyond that deadline, the breach-of-contract
claim is dismissed with prejudice.[2]

B.      Individual Breach-of-Contract Claims

Defendants Maratea and Woodall seek dismissal of the breach-of-contract claims against
them.  Maratea and Woodall maintain that § 301 creates no individual liability because they are
not parties to the CBA and have assumed no liability under it.  Mot. [9] at 9.  In *Complete Auto
Transit, Inc. vs. Reis*, the United States Supreme Court examined § 301's legislative history and
concluded "that § 301(a) does not sanction damages actions against individual employees for
violating the no-strike provision of the collective-bargaining agreement."  451 U.S. 401, 417
(1981).  Defendants contend that this same principle applies to union-member claims against
individual defendants who work in management.

Gray agrees that § 301 "does not prescribe recovery of damages from individual
employees."  Pl.'s Mem. [16] at 10.  But he argues that the section includes an exception
allowing claims "where, as here, the conduct of these individual employees in breaching the
Contract is violative, intentional, deliberate, deceptive, and misleading."  *Id.* (citing *Complete
Auto Transit*, 451 U.S. at 415).   He then contends that Maratea "manufactured documents in an
effort to show plaintiff participated in and proceeded to Step 3 of the grievance process."  *Id.* at
9.  Gray does not directly address the motion to dismiss as to Woodall.

---

[2]According to Gray, Defendants failed to show that applying Mississippi's statute of
limitations would frustrate federal labor policy.  Pl.'s Mem. [16] at 8. *DelCostello* forecloses the
argument. *See* 462 U.S. at 162–65.

10

Gray's only authority for the exception he urges is *Complete Auto Transit*, but that case does not discuss Gray's stated exception.  *See* 451 U.S. at 415.  Moreover, this portion of Defendants' motion is limited to the breach-of-contract claim, and Gray fails to explain how a non-party to a contract can be liable under a breach-of-contract theory.[3]  Finally, the factual allegations Gray cites as supporting a claim against Maratea are not reflected in the Complaint, so they are not presently before the Court.[4]

  C.  Failure to Exhaust

When an employee alleges breach of a collective-bargaining agreement, "it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement."  *Vaca*, 386 U.S. at 184.  There is no dispute that Articles 6 and 7 of the CBA establish exclusive grievance and arbitration procedures for alleged violations of the CBA, including disputes over its interpretation and application.   CBA [9-1] at 5–7.  There can likewise be no dispute that those procedures cover Gray's breach-of-contract and race-discrimination claims.  Article 3 precludes "any manner" of discrimination.  *Id.* at 4.  Article 8 prohibits discharge or discipline without just cause.  *Id.* at 7.  Accordingly, a duty to exhaust existed as to Gray's claims.  *See Vaca*, 386 U.S. at 184.

---

[3]Even under Mississippi law the claim would fail.  *See, e.g.*, *Gardner v. Jones*, 464 So. 2d 1144, 1151 (Miss. 1985).

[4]Rule 12(b)(6) allows the Court to examine the grievance form Maratea prepared because it is referenced in the Complaint.  Gray suggests that because that form included a blank for Gray's signature but was not signed, Maratea manufactured evidence.  Even assuming Gray reaches the correct conclusion, the allegation has not been made in the Complaint and would be irrelevant to a breach-of-contract claim against a non-party to the contract.

11

While acknowledging the lack of exhaustion, Gray argues that it was not required because Levi Strauss repudiated the CBA.  Pl.'s Mem. [16] at 3–6 (citing *Vaca*, 386 U.S. at 185).  But as previously noted, Levi Strauss did not repudiate the "remedial procedures specified in the contract."  *Rabalais*, 566 F.2d at 519.  Therefore, Gray had a duty to exhaust that was never fulfilled.  His breach-of-contract and § 1981 claims are therefore dismissed.  Dismissal on this basis is without prejudice.

IV.    Conclusion

The Court has considered the parties' arguments.  Those not specifically addressed would not have changed the outcome.  For the foregoing reasons, the stay in this case is hereby lifted, Defendants' Motion to Dismiss [9] is granted, and Gray's claims for breach of contract are dismissed with prejudice.  His § 1981 claim is dismissed without prejudice for failure to exhaust.

A separate final judgment shall be entered in this action in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 23rd day of February, 2015.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE